Irving Lang, J.
The primary question before the court in this suppression hearing is whether an oral confession, voluntarily given to a detective after appropriate warnings, must be suppressed because the defendant was represented by counsel, even though the interrogation was initiated by a letter sent to the District Attorney by the defendant.
THE PACTS
Defendant Richard Carbone is presently serving a 20-year sentence on a conviction in Queens County for rape, a classic look-alike, wrong man case where someone else was initially accused.
After the commencement of the service of that sentence in the Auburn Correctional Facility, he was brought to New York County on September 9, 1973 to appear in a lineup in this robbery case. At the lineup defendant was represented by an attorney for the Legal Aid Society, which had represented him previously in this New York County robbery and in the Queens County rape case. The complaining witness not only failed to identify defendant at the lineup, but insisted that another person in the lineup was the perpetrator. (Indeed, at this writing the victim still maintains that the defendant is not her assailant.)
*152 After Ms return to Auburn, defendant Carbone on September 23, 1973, wrote a letter from Auburn to New York County Acting District Attorney Alfred Scotti in which he maintained that the wrong person was being prosecuted for the New York County robbery and in which he described how he himself committed the crime.
On October 2, 1973, Detective Natale Laurendi of the District Attorney’s office visited the defendant at Auburn in response to the letter confessing the robbery.* Detective Laurendi advised the defendant that he had the right to remain silent and to refuse to answer any questions. He asked him if he had an attorney for the Queens case and for the New York County case. Defendant replied that he had lawyers in these matters but that he did not want one now. Defendant stated further that he was glad to see the detective and that if there had been no response from the District Attorney’s office he was going to write to the newspapers. Defendant then proceeded to confess to the robbery in great detail, describing with much particularity events of the crime which could only be known to one who was present at its commission.
There was a subsequent conversation between Detective Laurendi and defendant Carbone in the District Attorney’s office on October 19, 1973, where defendant was again advised of his rights, where he again refused an attorney and where he again confessed to even more details of the robbery. Defendant had again written to Mr. Scotti on October 15.
There were several subsequent meetings with the detective and one on November 1, 1973, in which the defendant insisted that he be allowed to prove his guilt by viewing the scene of the crime in Greenwich Village, where he pointed out in detail significant places involved in the crime. On all of these occasions he was read his Miranda warnings from a printed form. In addition, defendant wrote two more letters to the District Attorney’s office on December 11,1973 and December 31,1973.
Defendant was then indicted on December 19,1973 on charges relating to this New York County robbery. His attorney now makes this motion to suppress the oral statements (not the •letters) made to the District Attorney’s office on the ground that they were elicited in violation of defendant’s Fifth and *153 Sixth Amendment rights. A Huntley hearing on the motion was held before me on September 12, 1974.
THE LAW
The defendant’s prime reliance in this case is a statement in People v. Arthur (22 N Y 2d 325, 329) which says: “ Once an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel ”. However, since that statement was made, the Court of Appeals in a plethora of subsequent cases has attempted to explain, limit, and qualify its position.
For example, People v. McKie (25 N Y 2d 19, 26) states that “ Arthur did not lay down a rule that, whenever a suspect is represented by counsel, the police may not question him except in the presence of counsel.” One of the factual distinctions of McKie is that the defendant initiated a verbal duel with the police, which resulted in his blurted-out confession. The confession was the result of defendant’s own verbal attack and bravado. There was nothing in the record to indicate any unfair or coercive act on the part of the police which resulted in defendant’s spontaneous admission. Defendant McKie was out in the street at the time he made his confession; he was not in custody as was the defendant in People v. Arthur and the defendant here.
Thus, we must look further for an amplification of the rule where defendant is in custody. In People v. Kaye (25 N Y 2d 139), the court further qualified the Arthur rule in holding that a volunteered confession without interrogation, after defendant had been advised of his Miranda rights, is admissible even if defendant was in custody and represented by counsel who was not present at the time of confession. In Kaye, defendant’s attorney had surrendered defendant to the police after counseling him as to his rights and advising him not to make a statement. Counsel did not accompany his client on the trip to the police station, and in the car defendant blurted out his confession. He was warned by the police that he didn’t have to make a statement, but he insisted that he “ had nothing to hide.”
The court stated in People v. Kaye (supra) that truly volunteered confessions are always admissible even under Miranda v. Arizona and even though a suspect in custody has not been warned of his constitutional rights. Indeed, the United States Supreme Court in Miranda itself (384 U. S. 436, 478) states: “ There is no requirement that police stop a person who enters *154 a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. ’ ’
The Court of Appeals in People v. Kaye (supra, p. 145) goes on to say in very strong language that “No court has yet held that a police officer must take affirmative steps, by gag or otherwise, to prevent a talkative person in custody from making an incriminating statement within his hearing.”
The facts in our present case are even less susceptible to an inference of coercion than Kaye (supra). In this case, although defendant was technically in custody, he was in prison convicted of another, unrelated charge. His custody was merely incidental and not in any way conducive to the making of the confession.
The defendant insisted on confessing. Indeed, he threatened to complain to the newspapers if he received no response from the District Attorney’s office. Such a confession cannot by any stretch of the imagination be called coerced, either by the circumstances of defendant’s being in custody on another matter or by any action taken by the police. As the court said in People v. Rodney P. (Anonymous) (21 N Y 2d 1, 11) not every conversation between the police and the accused is unlawful. A confession is only inadmissible when questioning takes place under circumstances which are likely to affect substantially the individual’s “ 1 will to resist and compel him to speak when he would not otherwise do so freely. ’ ”
In People v. Robles (27 N Y 2d 155) the court enunciated the proposition that the particular circumstances should govern the question of the waiver of the right to counsel in confession situations. The court stated that the rule in People v. Arthur (supra) is not applicable unless there is evidence of conduct which would indicate an intention on the part of the police to victimize the defendant or outwit his attorney in order to carry on an inquiry. In Robles (supra, p. 159) the outburst [confession] to the detective which exposed Robles’ involvement was ‘ ‘ an impetuous unbosoming of his implication in the crime * * * The People are not to be charged with violating the defendant’s right to counsel when the opportunity to exercise that right has been fully and effectively extended to a defendant who then chooses to speak rather than remain silent. ’ ’ The case against suppression is stronger here than in the Robles case. Unlike the situation in Robles, there was no “ impetuous unbosoming of his implication in the crime ”. To the contrary, Carbone calmly and deliberately chose to bypass *155 his attorney and confess his guilt, first in writing and then orally.
Clearly the distinction between Arthur and the “ modifying ” cases such as Kaye and Robles is that in Arthur there was an element of bad faith on the part of law enforcement where access to an attorney was either deliberately or negligently delayed. Kaye, Robles and the instant case do not have this element of bad faith. I find beyond a reasonable doubt that defendant was given the opportunity to remain silent and to communicate with and retain counsel. On every occasion of his conversations-with Detective Laurendi he was advised of his rights as prescribed in Miranda v. Arizona (384 U. S. 436).
I hold further that defendant knowingly and voluntarily waived his right to counsel. The defendant’s written and oral statements are admissible upon the trial of this action.
The motion to suppress is denied.

 There is some question as to whether Detective Laurendi previously knew of Carbone's legal representation in the lineup before he went to interview him, but clearly the People are chargeable with that knowledge (see People v. Maynard, N. Y. L. J., April 3, 1974, p. 18, col. 7).